ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL III

| HÉCTOR M. TORRES MORALES<br><br>Recurrido<br><br>v.<br><br>GRUPO JOEL VALLES INC. DBA OPTIONS DEALER; VILLA COOP TOYOTA DE P.R. CORP<br><br>Recurrente | **KLRA202400142** | *REVISIÓN ADMINISTRATIVA* procedente de Asuntos al Consumidor<br><br>Caso Núm.: PONB-2022-0003639<br><br>Sobre: Compraventa de Vehículo de Motor |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Bonilla Ortiz, la Jueza Mateu Meléndez y Prats Palerm.

Bonilla Ortiz, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 28 de junio de 2024.

Comparece ante este foro, Grupo Joel Valle-Options, Corp. H/N/C Options Dealer (Options Dealer o recurrente) mediante revisión judicial presentada el 19 de marzo de 2024. Solicita la revisión de una *Resolución* notificada el 17 de enero de 2024 por el Departamento de Asuntos del Consumidor (DACo). Mediante el referido dictamen, el DACo decretó la nulidad de un contrato de compraventa de un vehículo de motor y ordenó la devolución de las prestaciones.

Por los fundamentos que exponemos a continuación, **CONFIRMAMOS** la *Resolución* recurrida.

### I.

El 3 de enero de 2023, el Sr. Héctor M. Torres (señor Torres o recurrido) presentó una *Querella* en el DACo contra el recurrente; la Cooperativa de Ahorro y Crédito Villa-Coop Agustín Burgos Rivera H/N/C/ Villa-Coop; Toyota de Puerto Rico, Corp.; y Autokirei, LLC

H/N/C/ Autocentro Toyota. Posteriormente, el 24 de abril de 2023, el recurrido presentó una *Querella Enmendada*.[1] En ella, alegó que el 9 de noviembre de 2022, adquirió mediante contrato de compraventa del concesionario Options Dealer, un vehículo de motor usado marca Toyota, modelo Sienna, del año 2021, con número de serie 5TDERKEC7MS024230, por el precio de $62,000.00. Además, indicó que, tuvo que pagar $3,000.00 adicionales, mediante un compromiso de pago a treinta (30) días, luego de haber firmado el contrato de compraventa para que pudieran entregarle el vehículo.

En adición, sostuvo que, al momento de adquirir el vehículo, el vendedor de Options Dealer le informó que el vehículo:

> a) había sido inspeccionado de forma detallada; b) estaba en óptimas condiciones; c) nunca había sido impactado y reparado; d) se encontraba libre de defectos; e) no había sido alterado o modificado en forma alguna; f) nunca había sido objeto de un choque o impacto; y g) tenía un remanente sustancial de la garantía de fábrica básica de 3 años o 36,000 millas (lo que ocurra primero).

Sin embargo, arguyó que posterior a la compraventa descubrió que el vehículo había sido impactado y reparado, en consecuencia, la garantía de fábrica fue anulada. Asimismo, esbozó que desconocía -al momento de la transacción- estos hechos. Finalmente, indicó que la parte recurrida le había cobrado $495.00 por concepto de "doc fee", siendo un cobro contrario a las disposiciones de ley. Así las cosas, solicitó la nulidad o resolución del contrato de compraventa, además de una compensación por daños y perjuicios, honorarios de abogado, pago del perito, y multas por incumplimiento con los reglamentos.

---

[1] *Querella Enmendada*, anejo I, págs. 1-17 del apéndice del recurso.

El 17 de mayo de 2023, Options Dealer presentó *Contestación a Querella*.[2] En esencia, sostuvieron que el vehículo fue vendido sin vicio oculto alguno. A su vez, indicaron que el vehículo dado en "trade-in" tenía atrasos con el banco, además que había sido chocado teniendo un costo de hojalatero por $1,800.00, multas y marbete vencido. En cuanto al cobro de los $3,000.00, argumentaron que se debieron a un pronto para que le pudieran aprobar el financiamiento.

El 6 de junio de 2023, el Sr. José Torrón Martínez, Técnico de Investigación del DACo, llevo a cabo una inspección del vehículo objeto de la Querella.[3] El técnico de investigación emitió un *Informe de Inspección* en el cual indicó que el vehículo había sido llevado al taller para evaluar defectos estructurales y soporte del radiador. Asimismo, añadió lo siguiente:

> El soporte del radiador se observó con el bonete abierto y no mostró estar averiado. El "cuartel panel" me aparento ser repintado ya que los "Spot Molding" y aislantes mostraban ser los de fábrica y también el querellado no me mostró donde fue reparado estructuralmente. Este no mostró área de reparación con relleno en el "Sheet Panel".
> No encontré daño estructural.

Además de otras opiniones del técnico, finalmente dispuso que el costo de reparación sería desde $1,500.00 hasta $3,000.00.

En desacuerdo, el 23 de junio de 2023, el señor Torres presentó *Objeción al Informe de Inspección*.[4] En esencia sostuvo que el Informe se desvía de los propósitos de la inspección, puesto que, incluye

---

[2] *Contestación a Querella*, anejo II, págs. 18-20 del apéndice del recurso.
[3] *Informe de Inspección*, anejo XIII, págs. 48-53 del apéndice del recurso.
[4] *Objeción al Informe de Inspección*, anejo XIV 54-56 del apéndice del recurso.

elementos impertinentes a la causa de acción del recurrido.

El 26 de junio de 2023, Options Dealer presentó *Moción en Obediencia de Orden*, mediante la cual reiteró que el vehículo no sufrió desperfectos o vicios ocultos.[5] Alegó que tampoco es una opción correcta el hallazgo y recomendación que realizó el técnico del DACo.

Evaluadas los argumentos de las partes, el DACo emitió una *Notificación y Orden*, e indicó que los citaba para una vista administrativa el 28 de agosto de 2023, e iniciaría el proceso con el testimonio del señor Torres.[6]

Así las cosas, luego de la celebración de varias vistas administrativas, entre los días 28 de agosto de 2023, 22 y 27 de septiembre de 2023, la agencia recurrida emitió una *Resolución* el 16 de enero de 2024, en la cual decretó la nulidad del contrato de compraventa de vehículo de motor y ordenó la devolución de las prestaciones.[7] Asimismo, luego de evaluar la prueba testifical y documental desfilada, el DACo realizó las siguientes determinaciones de hechos:

> 1. El 9 de noviembre de 2022 la parte querellante adquirió mediante contrato de compraventa del concesionario co-querellado Grupo Joel Valle-Options Inc. h/n/c Options Dealer (en adelante "Options Dealer") un vehículo de motor usado marca Toyota, modelo Sienna, del año 2021, de número de serie 5TDERKEC7MS024230 (en adelante "el vehículo"), a un costo convenio de $62,000.00.
>
> 2. Al momento de la adquisición del vehículo la parte querellante entregó a Options Dealer un vehículo de motor usado marca Toyota, modelo Sienna, del año 2015 en concepto de "trade in" por la cantidad de

---

[5] *Moción en Obediencia de Orden*, anejo XV, págs. 57-59 del apéndice del recurso.
[6] *Notificación y Orden*, anejo XVI, págs. 60-62 del apéndice del recurso.
[7] *Resolución*, anejo XXII págs. 439-456 del apéndice del recurso.

$8,000.00. Dicha cantidad ($8,000.00) fue acreditada o abonada al contrato de compraventa. En adición, al momento de la compra la parte querellante entregó a Options Dealer un pago en concepto de tablilla, registro o traspaso por la cantidad de $495.00.

3. La compraventa del vehículo quedó perfeccionada mediante un Contrato de Venta al Por Menor a Plazos con la entidad co-querellada Cooperativa de Ahorro y Crédito Villa-Coop Agustín Burgos Rivera h/n/c Villa-Coop (en adelante Villa-Coop). Mediante el mismo, se fijó el precio final de compra del vehículo, a saber, $62,000.00, y se estableció que la parte querellante brindó un pronto pago de $8,000.00. Sin embargo, la cuantía de $8,000.00 correspondió propiamente al crédito por el vehículo que fuera entregado en "trade in" (2015 Toyota Sienna) al momento de la transacción, cantidad que fue aplicada (acreditada) al precio de compra final de vehículo.

4. Conforme el Contrato de Venta al Por Menor a Plazo de Villa-Coop Agustín Burgos, el financiamiento del vehículo fue pactado por un término de 72 meses, con los primeros 83 pagos de $1.047 y un último pago de $957.29. (último pago en o antes de 09/nov/2029.

5. Al momento de la compra del vehículo, el vendedor de Options Dealer le informó a la parte querellante que el mismo: a) estaba en óptimas condiciones; b) nunca había sido impactado y reparado; y c) tenía un remanente sustancial de la garantía de fábrica básica de 3 años o 36,000 millas (lo que ocurra primero).

6. El 23 de febrero de 2023 el querellante fue informado que el vehículo no solo fue impactado (en su carrocería) y reparado, sino que parte de su garantía de fabrica se encontraba anulada debido a tal incidente. Esta información el querellante la descubrió al visitar al agente de servicio del fabricante Autokirei, LLC h/n/c Autocentro Toyota (en adelante "Autocentro Toyota") para recibir servicio de reparación bajo garantía.

7. Ante la anulación de parte de la garantía del vehículo por el mismo haber estado involucrado en un choque o impacto, la parte querellante se vio en la obligación de pagar $237.25 por los servicios provistos por Autocentro Toyota.

8. El 3 de enero de 2023 la parte querellante presentó una Querella Enmendada mediante representación legal. La presente Querella Enmendada sustituyó la querella original. Sin embargo, la parte querellante alegó, entre otros asuntos, que durante la transacción de compraventa del vehículo hubo una serie de irregularidades. Por lo que deseaba devolver la unidad al vendedor.

9. El 24 de abril de 2023 la parte querellante presentó una Querella Enmendada, mediante representación legal. La presente Querella Enmendada sustituyo la querella original. Sin embargo, tratándose la Querella Enmendada de hechos o alegaciones que "surgen de la conducta, acto, omisión o evento expuesto en la alegación original"; las alegaciones y causas de acción allí contenidas se retrotraen al momento de la presentación de la querella original. Véase *Ortiz Díaz v. R. R. Motors Sales*, 131 DPR 829, 837 (1992); *Reyes Castillo v. Ramos*, 139 DPR 925 (1996).

10. Mediante la Querella Enmendada la parte querellante alegó, entre otros asuntos, que el contrato de compraventa del vehículo es nulo por dolo contractual, la ausencia de varios de los elementos de un contrato (objeto, consentimiento y causa), así como por el contrato de compraventa ser contrario a la ley, la moral y el orden público ya que su perfección es producto de la práctica engañosa o anuncio engañoso de parte de Options Dealer. A su vez, se solicitó al Departamento que al decretar la nulidad (por distintas causas expuestas) o resolución (por vicios ocultos) del contrato de compraventa del vehículo, ordenara la devolución de las prestaciones y el pago del balance del préstamo de auto con Willa-Coop, honorarios de abogado, daños y perjuicios, entre otros remedios.

11. El 6 de junio de 2023 las partes comparecieron a la inspección conjunta citada por el Departamento. La inspección tuvo lugar en Autocentro Toyota Dealer #1088 Ave Muñoz Rivera (Área de servicio) San Juan P.R. 00919.

12. El informe de la inspección conjunta del Departamento fue notificado y archivado en autos el 9 de junio de 2023.

13. De acuerdo con el informe preparado por el perito del Departamento, señor José Torrón Martínez, durante la inspección se observó que el vehículo tenía el "Cuartel Panel" (lado del chofer) mostraba haber sido repintado hasta la tapa de la gasolina,

área donde le dejaron "Edge Foam Masking Tape" mejor conocido en la industria como tripa de pollo. El informe también detalló que los defectos en el terminado de la pintura del vehículo requerían una reparación cuyo costo se estimó entre $1,500.00 y $3,000.00.

14. El 23 de junio de 2023 la parte querellante mediante su representación legal presentó objeción al informe del perito de DACO. En la misma, se expuso: a) que el informe omite mencionar que el vehículo fue impactado y/o chocado, dato que había sido validado por el perito del querellante y Autocentro Toyota; B) que en parte del informe el perito de la agencia indicó que el vehículo no fue reparado con "relleno" o "bondo" en el "sheet panel"; c) el costo estimado de reparación de los defectos del vehículo ("repintado" del vehículo entero), por ser especulativo y/o no estar debidamente fundamentado o desglosado.

15. Options Dealer no objetó el informe del perito de la agencia, por lo que conforme las Reglas de Procedimiento Adjudicativos del Departamento, dio por estipulado su contenido, conforme a la Regla 15.3 del Reglamento de Procedimientos Adjudicativos #8034 del DACO.

16. En la Vista Administrativa el perito de la parte querellante, Josué Sánchez Colón, declaró que: a) el vehículo había sido impactado y reparado en ambos paneles traseros; b) el vehículo fue pintado a vuelta redonda (con excepción del bonete y la capota); c) diferentes partes del vehículo mostraban señales claras de haber sido objeto de reparaciones defectuosas de hojalatería un trabajo cuyo costo estima en $5,500.00.

17. El testimonio del perito del querellante sobre las áreas del vehículo que mostraban señales de haber sido impactado y reparado es consistente con los hallazgos de Autocentro Toyota, hallazgo que llevaron al agente de servicio del fabricante a denegar servicio del vehículo bajo garantía.

18. Ninguna de las partes querelladas presentó prueba documental o testifical pericial que refutara el testimonio del perito de la parte querellante.

19. En la vista administrativa la parte querellante declaró que el vehículo no había sido chocado y reparado por él, previo a la radicación de la querella o la fecha

en que el perito del Departamento llevó a cabo la inspección conjunta. Asimismo, declaró que el vendedor nunca le informó que el vehículo había sido chocado y reparado con anterioridad a su compraventa y que, por el contrario, el vendedor le indicó que el vehículo se encontraba libre de choques o defectos por impactos.

20. Ninguna de las partes querelladas presentó prueba documental o testifical que refutara el testimonio de la parte querellante.

21. De igual forma, ninguna de las partes querelladas presentó prueba que demostrara que los defectos por impactos o choque del vehículo son atribuibles a eventos ocurridos durante el tiempo que la parte querellante ha tenido el mismo.

22. Options Dealer vendió un vehículo que había sido impactado y reparado con anterioridad a su venta a la parte querellante.

23. Options Dealer conocía o debió conocer que el vehículo había sido impactado y reparado con anterioridad a la transacción objeto de la presente querella.

24. El impacto (choque) sufrido por el vehículo y confirmado durante la inspección conjunta celebrada por el Departamento, no fue ocasionado por la parte querellante.

25. Al momento de su compraventa la parte querellante desconocía que el vehículo había sido impactado y reparado con anterioridad.

26. Al momento de su compraventa Options Dealer incumplió con su deber de informar a la parte querellante sobre las condiciones reales del vehículo, viciando el consentimiento que fuera prestado por éste.

27. Al momento de la compraventa del vehículo Options Dealer incumplió con su deber de brindar a la parte querellante "datos relevantes", viciando el consentimiento que fuera prestado por éste.

28. Al momento de la compraventa Options Dealer incurrió en prácticas engañosas y realizó falsas representaciones sobre las condiciones del vehículo. Estas falsas representaciones contribuyeron un anuncio engañoso, conforme la reglamentación del Departamento.

29. Options Dealer no le entregó a la parte querellante el vehículo según fuera pactado.

30. De la parte querellante haber conocido las condiciones reales del vehículo o que el mismo había sido impactado y reparado con anterioridad, no lo hubiera comprado.

31. Options Dealer realizó un cobro indebido o ilegal de $495.00, por concepto de registro y tablilla.

32. La parte querellante incurrió en gastos económicos como consecuencia de los actos de Options la querellante, incluyendo honorarios de abogados y gastos de perito.

33. La parte querellante incurrió en la cantidad de $2,600.00 por concepto de servicios legales para el trámite de la presente controversia, así como $1,400.00 en perito.

Aquilatada la prueba testifical y documental obrante en el expediente administrativo y a base de las antes transcritas determinaciones de hechos, el DACo decretó la resolución del contrato de compraventa del vehículo de motor objeto de la *Querella* de epígrafe, y ordenó la devolución de las contraprestaciones. A su vez, determinó que la Cooperativa de Ahorro y Crédito Villa Coop Agustín Burgos Rivera, era responsable solidariamente.

Además, decretó la nulidad del cargo de $495.00 que Options Dealer le cobró al señor Torres por concepto de tablilla, registro o traspaso. Finalmente, determinó que la parte recurrente incurrió en temeridad, e impuso honorarios por tal concepto por la suma de $2,600.00. Adicional, a la cantidad de $1,400.00 para el pago de los gastos de perito. A tenor con lo anterior, el DACo declaró *Ha Lugar* la *Querella* incoada por el recurrido.

En desacuerdo, el 5 de febrero de 2024, Options Dealer presentó una *Reconsideración*.[8] Ahora bien, por haber transcurrido el término de (15) días provistos por Ley para que el foro administrativo la atendiera, dicha moción se considera rechazada de plano.

Inconforme con tal proceder, Options Dealer compareció ante este Foro Apelativo, imputando el siguiente señalamiento de error:

> ERRÓ EL DACO AL EMITIR DETERMINACIONES DE HECHO EN FORMA TAN IRRAZONABLE QUE INCURRE EN UN ABUSO DE DISCRECIÓN CRASO AL APLICAR EL DERECHO MEDIANTE RESOLUCIÓN CON EL EFECTO JURÍDICO DE SER UNA ADJUDICACIÓN INJUSTA Y CONTRARIA A DERECHO, QUE DE HECHO CONSTITUYE ENRIQUECIMIENTO INJUSTO:
>
> (i) La Evidencia Que Surge Del Expediente Administrativo No Respalda La Alegación Del Querellante De Que Se Hubiera Vendido Un Auto Ocultándole "Choque Y/O Impacto" O Que No Tuviese Garantía Por Esta Razón;
>
> (ii) No Procede Que Se Decrete A Resolución Y/O Nulidad Del Contrato, Cuando Como Cuestión De Hecho Surge Del Expediente Administrativo Que El Querellante No Cumplió Con La Regla 29.3 Del "Reglamento De Garantías De Vehículos De Motor", Para Dar "Oportunidad Razonable Para Reparar" Los Alegados "Defectos";
>
> (iii) Al Tener Remedio En El Expediente Administrativo Extremadamente Menos Onerosos Para Atender La Queja Del Querellante, Permite Que El Querellante Utilice El Vehículo Mas De 1,200 Millas Al Mes Y Que El Co-Querellado Tenga Que Devolver Los Meses De Financiamiento Del Vehículo Al Querellante, Entiéndase En Nada Se Afectó El Uso Y Disfrute Pleno Del Vehículo O Para El Cual Fue Adquirido Por El Co-Querellado.
>
> (iv) Permite Que El Querellante Utilice El Vehículo Más De 1,200 Millas Al Mes Y Que El Co-Querellado Tenga Que Devolver Los Meses De Financiamiento Del Vehículo Al Querellante, Entiéndame En Nada Se Afectó El Uso Y Disfrute Pleno Del Vehículo, Para El Cual Fue Adquirido Por El Co-Querellado.

---

[8] *Reconsideración*, anejo XXIV, págs. 457-468 del apéndice del recurso.

(v) El Querellante No Viene Con Manos Limpias Al Foro Administrativo Y/O Cometió Dolo Con El Co-Querellado En La Compraventa, No Cumplió Con El Acuerdo Para Con El Co-Querellado.

El 6 de mayo de 2024, el señor Torres presentó su alegato en oposición.

Estando en posición para resolver, procedemos a así hacerlo.

## II.

### -A-

Es norma conocida que los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que estas cuentan con vasta experiencia y pericia para atender aquellos asuntos que se les han sido delegados por la Asamblea Legislativa. *Oficina de Ética Gubernamental v. Martínez Giraud*, 210 DPR 79, 88-89 (2022); *Super Asphalt v. AFI y otros*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016). Por estas razones, dichas determinaciones suponen una presunción de legalidad y corrección, que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *Oficina de Ética Gubernamental v. Martínez Giraud*, supra; *Batista, Nobbe v. Jta. Directores,* 185 DPR 206, 216 (2012). No obstante, tal norma no es absoluta, por ello nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.

En *Torres Rivera v. Policía de Puerto Rico*, supra, pág. 628, nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la forma siguiente:

> Los tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida.

Del mismo modo, la Sección 4.5 de la Ley Núm. 38 del 30 de junio de 2017, 3 LPRA 9675, conocida como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), estableció el marco de revisión judicial de las agencias administrativas. *Rolón Martínez v. Supte. Policía*, supra. La intervención del tribunal se limita a tres (3) áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675. Véase, además: *Oficina de Ética Gubernamental v. Martínez Giraud*, supra; *Torres Rivera v. Policía de PR*, supra; *Nobbe v. Jta. Directores*, supra. Por lo tanto, aquellas determinaciones de hechos

formuladas por el ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Oficina de Ética Gubernamental v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otros*, supra.

Ahora bien, las determinaciones de derecho pueden ser revisadas en su totalidad. Sec. 4.5 LPAU, 3 LPRA sec. 9675. Véase, además: *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Torres Rivera v. Policía de PR*, supra, pág. 627. Sin embargo, los tribunales deberán brindarle deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. *Rolón Martínez v. Supte. Policía*, supra; *Torres Rivera v. Policía de PR*, supra. Esto, pues nuestro Tribunal Supremo ha dispuesto que la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: (1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales. *Íd.*; *Oficina de Ética Gubernamental v. Martínez Giraud*, supra.

Finalmente, destacamos que el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Lo anterior ya que la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que

resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia. *Íd.*

-B-

La Sección 3.13 de la LPAU dispone que "[l]as Reglas de Evidencia no serán aplicables a las vistas administrativas, pero los principios fundamentales de evidencia se podrán utilizar para lograr una solución rápida, justa y económica del procedimiento." Por tanto, los procedimientos administrativos son de naturaleza flexible, por lo que rige una norma liberal en la aplicación de las reglas con el único propósito de descubrir la verdad. *Otero v. Toyota*, 163 DPR 716, 732 (2005); *JRT v. Aut. De Comunicaciones*, 110 DPR 879 (1981).

-C-

Conforme establece el Código Civil de Puerto Rico de 2020, el contrato es el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones. Art. 1230 del Código Civil de 2020, 31 LPRA sec. 9751. A tenor con esto, las partes pueden establecer las cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarias a las leyes, a la moral ni al orden público. *Íd.*, Art. 1232 del Código Civil de 2020, 31 LPRA sec. 9753.

Una vez las partes prestan su consentimiento, estas quedarán obligadas al cumplimiento de la obligación pactada, ya que "[l]o acordado en los contratos tiene fuerza de ley entre las partes…". *Íd.*, Art. 1233 del Código Civil de 2020, 31 LPRA sec. 9754. Lo anterior es un concepto conocido en latín como *pacta sunt servanda*,

el cual establece que las obligaciones que se derivan de contrato perfeccionado rigen sobre todas las partes contratantes y no pueden ser unilateralmente alteradas. M. García Cárdenas, *Derecho de Obligaciones y Contratos*, 2da edición, Puerto Rico, MJ Editores, 2017, p. 20.

Además, nuestro Código Civil establece que no existe contrato hasta tanto las partes manifiestan su consentimiento sobre el objeto y la causa. Art. 1237 del Código Civil de 2020, 31 LPRA sec. 9771. En virtud de ello, para que un contrato sea válido, se requiere que concurran tres (3) elementos esenciales, a saber: (1) consentimiento de los contratantes, (2) objeto cierto que sea materia del contrato, y (3) la causa de la obligación que se establezca. *Aponte Valentín v. Pfizer Pharmaceuticals, LLC*, 208 DPR 263, 284 (2021). La falta de alguno de ellos será causa de nulidad del contrato, y por tanto, inexistente en el orden jurídico. *Rosario Rosado v. Pagán Santiago*, 196 DPR 180, 188 (2016).

Es pertinente destacar que, por el contrato de compraventa, la parte vendedora se obliga a transferir a la parte compradora el dominio de un bien, y esta a su vez se obliga a pagar un precio cierto. Art. 1274 del Código Civil de 2020, 31 LPRA sec. 9941. Es importante destacar que una de las obligaciones de la parte vendedora es "garantizar al comprador que el bien vendido tiene las cualidades prometidas y que está libre de defectos que disminuyen o destruyen su valor o la aptitud para su uso ordinario o convenido" (énfasis nuestro). Íd., Art. 1287, sec. 9991.

**-D-**

Según nuestro ordenamiento jurídico, los vicios de la voluntad comprenden el error, el dolo, la violencia y la intimidación. Art. 285 del Código Civil de 2020, 31 LPRA sec. 6191. Si en un negocio jurídico media la presencia de alguno de estos vicios, el acuerdo es anulable si dicho vicio fue determinante para su otorgamiento. *Íd.*, Art. 293 del Código Civil de 2020, 31 LPRA sec. 6212. Específicamente, el "dolo" se define como la acción u omisión intencional por la cual una parte o un tercero inducen a otra parte a otorgar un negocio jurídico que de otra manera no hubiera realizado. *Íd.*, Art. 292 del Código Civil de 2020, 31 LPRA sec. 6211. Por lo tanto, "constituye dolo callar sobre una circunstancia importante relacionada con el objeto del contrato." *Bosques v. Echevarría*, 162 DPR 830, 836 (2004).

No todo tipo de dolo produce la nulidad del contrato. Para que el dolo produzca la nulidad del negocio jurídico, deberá ser grave y no haber sido empleado por las dos partes contratantes. *Íd.* En cambio, el dolo incidental no produce la nulidad del contrato, sino que sólo obliga a quien lo empleó a indemnizar por los daños y perjuicios. *Íd.*, Art. 294 del Código Civil de 2020, 31 LPRA sec. 6213. Esto es así, ya que este tipo de dolo no tiene una influencia decisiva en la esencia de la obligación. *Colón v. Promo Motor Imports, Inc.*, 144 DPR 659, 667 (1997). De hecho, en este tipo de casos existe la voluntad de contratar de la parte perjudicada, pero hay engaño en el modo en que se celebra el negocio jurídico. Por lo cual, el contrato

de todas formas se hubiera celebrado, pero no bajo las mismas condiciones. *Íd.*

Nuestro Tribunal Supremo dispuso en *Colón v. Promo Motor Imports, Inc.*, supra, pág. 668, que independientemente del tipo de dolo que se alegue, corresponde a quien reclama dicha conducta la responsabilidad de la prueba. No obstante, esto no significa que el dolo debe establecerse de manera directa, ya que puede demostrarse mediante inferencia o por evidencia circunstancial. *Íd.*, pág. 669.

En cuanto a la determinación de si existe dolo que anula el consentimiento, nuestro más alto foro ha resuelto que se debe considerar, entre otras cosas, la preparación académica del perjudicado, así como su condición social y económica, y las relaciones y el tipo de negocios en que se ocupa. *Citibank v. Dependable Ins. Co., Inc.*, 121 DPR 503, 518 (1988). Además, puede que en un caso, el dolo no surja de un simple hecho, sino del conjunto y la evolución de circunstancias y manejos engañosos. *Acosta & Rodas, Inc. v. PRAICO*, 112 DPR 583 (1982). De la misma manera, puede ser que lo que aparenta ser incidental desde la perspectiva general del contrato en cuestión sea en realidad esencial para los contratantes, por lo que el engaño o incumplimiento con alguno de los elementos de la contratación puede dar lugar a la variante del dolo causante. M. Albaladejo, *Comentarios al Código Civil Español*, 6ta ed., Madrid, Ed. Reus, 1967, T. VIII, Vol. 2, pág. 431.

**–E–**

Según las normativas previamente discutidas sobre los contratos, es relevante enfatizar que la invalidez de un contrato es una sanción legal que, mediante una

decisión judicial, priva a un negocio jurídico de sus efectos propios por adolecer de un vicio originario, esencial e intrínseco al acto. Art. 341 del Código Civil de 2020, 31 LPRA sec. 6311.

El negocio jurídico puede ser nulo o anulable. En esencia, es nulo si: (1) el objeto, la causa o el consentimiento son inexistentes; (2) el objeto o la causa son ilícitos; (3) carece de las formalidades exigidas por la ley para su validez; o (4) es contrario a la ley imperativa, la moral o el orden público. Por el contrario, es anulable si: (1) el otorgante tiene incapacidad de obrar, (2) concurre algún vicio de la voluntad, o (3) el acto adolece de un defecto de forma no solemne. *Íd.*, Art. 342 del Código Civil de 2020, 31 LPRA sec. 6312.

Además, la sentencia que invalida un negocio jurídico obliga a las partes a restituir, con sus frutos y productos, lo recibido en virtud del negocio jurídico. *Íd.*, Art. 346 del Código Civil de 2020, 31 LPRA sec. 6316.

**-F-**

El Departamento de Asuntos del Consumidor de Puerto Rico (DACo) fue creado con el objetivo principal de vindicar e implementar los derechos de los consumidores. Ley Núm. 5 de 23 de abril de 1973, *Ley Orgánica del Departamento de Asuntos del Consumidor*, 3 LPRA sec. 341 *et seq.* A tales fines, la ley habilitadora del DACo le otorgó al Secretario o la Secretaria la facultad de atender, investigar y resolver las quejas y querellas presentadas por los consumidores de bienes y servicios adquiridos en el sector privado de la economía. 3 LPRA sec. 341e(c). En ese sentido, la agencia cuenta con

amplios poderes para adjudicar las querellas ante su consideración, y conceder los remedios pertinentes conforme a derecho. 3 LPRA sec. 341 e(d).

De acuerdo con lo anterior y en virtud de la Ley Núm. 7 de 24 de septiembre de 1979, conocida como la *Ley de Garantías de Vehículos de Motor,* 10 LPRA secs. 2051 *et seq.*, el DACo adoptó el *Reglamento de Garantías de Vehículos de Motor*, Reglamento Núm. 7159 del 6 de junio de 2006, (Reglamento Núm. 7159). Este cuerpo reglamentario tiene como finalidad los siguientes objetivos: (1) proteger adecuadamente a los consumidores y sus inversiones en la adquisición de vehículos de motor; (2) procurar que todo consumidor que compre un vehículo de motor en Puerto Rico, le sirva para los propósitos que fue adquirido, y que reúna las condiciones mínimas necesarias para garantizar la protección de su vida y propiedad; y (3) prevenir las prácticas ilícitas en la venta de vehículos de motor en Puerto Rico. Regla 2, Reglamento 7159, *supra*. Además, aplica a toda persona natural o jurídica que se dedique a la venta y servicio de vehículos de motor nuevos o usados en Puerto Rico y debe interpretarse liberalmente a favor del consumidor. Reglas 3-4, Reglamento 7159, *supra*; *Polanco v. Cacique Motors*, 165 DPR 156, 163-164 (2005).

En lo que respecta al presente caso, el Reglamento Núm. 7159 del DACo le impone a todo vendedor de vehículos de motor ciertas obligaciones. Entre estas, la obligación de informar a cada consumidor el estado y las condiciones de la unidad que está adquiriendo. Por ello, la Regla 30 del Reglamento Núm. 7159 del DACo establece que:

30.1 - Todo vendedor estará obligado a notificarle por escrito al consumidor si el vehículo de motor usado que interesa ha sido usado como taxi, vehículo de transportación pública, vehículo de servicio público, de alquiler, de demostración o cualquier otra finalidad que conlleve un uso irregular o excesivo.

30.2. - Todo vendedor de un vehículo de motor usado, el cual haya sido impactado y reparado posteriormente, deberá indicarlo verbalmente y notificarlo por escrito al consumidor en el contrato de compraventa.

De otro lado, la Regla 37 del Reglamento Núm. 7159 expone que "[n]ada de lo dispuesto en este Reglamento limitará en forma alguna el derecho del consumidor a ejercer cualquier acción que le reconozca las leyes generales o especiales del Estado Libre Asociado de Puerto Rico, así como las acciones de saneamiento por evicción, saneamiento por vicios ocultos o redhibitoria y cualesquiera otras que reconozca el Código Civil de Puerto Rico." Regla 37 del Reglamento 7159, *supra*.

### III.

En el caso de autos, el planteamiento central que Options Dealer trae ante nuestra consideración, gira en torno a que el DACo erró al decretar la nulidad del contrato de compraventa del vehículo de motor en controversia. En esencia, alega que la evidencia presentada no demostró que hayan ocultado que el vehículo fue impactado, o no tuviera garantía. A su vez, que el señor Torres no cumplió con la Regla 29.3 del Reglamento Núm. 7159, *supra*.

Por su parte, el recurrido sostiene que quedó establecido que Options Dealer nunca le informó de manera verbal y por escrito que el vehículo había sido chocado y reparado, al contrario, su vendedor le indicó que estaba libre de choques o defectos de impactos, y

que tenía un remanente significativo de la garantía básica con el fabricante. Por ello, esbozó que la decisión de la agencia fue decretar la nulidad del contrato de compraventa. Añadió que, debido a la nulidad del contrato, es inaplicable las disposiciones de la Regla 29.3 del Reglamento, *supra*.

Así pues, debemos determinar si la parte recurrente incurrió en dolo grave al momento de la contratación. Específicamente, al no informarle al señor Torres que el vehículo de motor usado que estaba adquiriendo había sido impactado y posteriormente reparado.

Es ampliamente conocido que los tribunales debemos ser deferentes en torno a las decisiones administrativas, pero tal deferencia cederá cuando la determinación no esté basada en evidencia sustancial, cuando el ente administrativo haya errado en la aplicación de la ley y cuando la actuación resulte arbitraria, irrazonable e ilegal. *Torres Rivera v. Policía de Puerto Rico,* supra.

Lo cierto es que, luego de evaluar el expediente bajo nuestra consideración y la normativa aplicable al caso, no encontramos razones que justifiquen omitir la deferencia otorgada por el DACo. En consecuencia, llegamos a la conclusión de que la agencia recurrida no incidió en su decisión. Veamos.

Según se desprende del expediente del caso, el señor Torres adquirió un vehículo de motor usado en Options Dealer, el cual le indicaron que no había sido impactado, ni reparado, además que contaba con una garantía de fábrica básica. Sin embargo, el recurrido al llevar el vehículo a recibir servicios de reparación bajo garantía le notificaron que el vehículo había sido

impactado y reparado, consecuentemente, parte de su garantía de fábrica estaba anulada por el incidente. De un examen del expediente, revela que en el caso hay evidencia sustancial, -independiente del informe del perito del DACo y el cual fue objetado por el recurrido-, que el vehículo fue impactado. De hecho, se desprende de la opinión pericial notificada por el Sr. Sánchez, y los hallazgos de Autocentro Toyota, que el vehículo había sido reparado, más aún que los defectos encontrados requerían de otros trabajos. A su vez, el recurrente no presentó prueba que demostrara que los defectos encontrados eran atribuibles a eventos ocurridos posteriores a la venta del vehículo.

La reglamentación del DACo, es diáfana al disponer que nada de lo dispuesto en el Reglamento Núm. 7159, limitará el derecho del consumidor de ejercer cualquier acción que le reconozca la ley. Particularmente, el Código Civil de Puerto Rico y su jurisprudencia interpretativa reconocen que un contrato será inválido cuando se incurra en dolo. Como vimos, la validez del consentimiento en un contrato se ve afectada en la medida en que una parte actúa de forma dolosa.

Conforme surge del presente recurso, Options Dealer incumplió su deber de informar al momento de la adquisición que la unidad vehicular había sido reparado debido a un choque. Por ello, la alegada garantía con la que contaba el vehículo fue anulada parcial o totalmente. Así las cosas, al omitir al momento de la compraventa que el vehículo del recurrido había sufrido un choque, produjo la nulidad de la relación contractual.

En suma, estudiado el recurso judicial, sus apéndices y la transcripción de las vistas administrativas, concluimos que la actuación del DACo, está sustentada en aquella evidencia que obra en el expediente administrativo y que una mente razonablemente aceptaría como adecuada para sostener una conclusión. La agencia recurrida actuó dentro de los parámetros que le reconoce la legislación al resolver las contraprestaciones y requerir su devolución.

**IV.**

Por los fundamentos anteriormente expuestos, **CONFIRMAMOS** la *Resolución* recurrida.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones